(121 So. 720)

## NATIONAL CITY BANK OF MOBILE v. BARRET. (1 Div. 519, 519-A.)

Supreme Court of Alabama.   March 21, 1929.

Rehearing Denied April 18, 1929.

See, also, 214 Ala. 35, 106 So. 168.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellant.

George Bowen Cleveland, of Mobile, for appellee.

BOULDIN, J.   When this cause was here on last appeal (National City Bank v. Barret, 217 Ala. 611, 117 So. 55), the conveyance by Mrs. Barret of one-fourth interest in some 4,480 acres of land in Mississippi, with option to repurchase within two years, given to Barret Bros. & Co., and assigned at the time to Mrs. Barret, was held a mortgage. It was sustained as a valid mortgage to the extent of the indebtedness represented by what is known as the King notes. Mrs. Barret's right of recovery was defined as the value of her equity of redemption lost by the conveyance made by the bank to Pringle, a resident of Mississippi, on October 28, 1921.

It was pointed out that this was to be ascertained by finding the amount thereafter paid by Mr. Barret on the mortgage debt, thus fixing the balance still due as a valid charge against the lands, and the value of the mortgaged lands as of the same date.

The difference, if any, in Mrs. Barret's favor being her measure of relief. The cause was reversed with leave to take further evidence as the parties might be advised. Much additional evidence was taken on both the issues mentioned.

The trial court, following the method suggested, ascertained the value of the lands to be $2,576.37 in excess of the balance due on the mortgage debt, and decreed accordingly.

Appellant bank appeals to review this finding.

In ascertaining the amount paid on the mortgage debt, the court below adhered to original estimates made by Mr. Barret as to his part of the net receipts from certain shipping ventures in 1915. These were given from memory in lump sums aggregating $7,200. On former hearing it was claimed this sum went as payment on the $8,400 called for by the option, reducing the mortgage debt to $1,300.

Much further documentary evidence including bank records, correspondence, orders, and receipts were found and put in evidence on last hearing. The court found that of

said sum of $7,200 the sum of $5,487.13 was pledged to other matters and paid out on written order of Mr. Barret, leaving $1,712.87 for credit on the mortgage. This sum of $5,487.13 is not questioned. The written direction to so pay it out is admitted. We think the court did not give proper effect to other and repeated orders to pay any additional returns to Mr. Walsh.

A careful study of the evidence convinces us that the $1,712.87 was not retained or due to be applied on this debt.

The returns on one of the slips on which the $7,200 estimate was based appear never to have passed through this bank.

The sum of $1,000, the amount received from another, sufficiently appears to have been subject to a refunding bond awaiting the decision of an English Admiralty Court, and had to be refunded on orders from that court. Our conclusion is this was the first and only sum that was ever applied, even tentatively, or ever due to be applied, on this mortgage debt, and that the credit of $1,712.87 was improperly allowed. Any other payment should and probably would appear on the bank records.

Not questioning the figures as to the mortgage debt, the valid charge as against Mrs. Barret, viz., $6,300 with interest at 7 per cent. from December 29, 1911, to October 28, 1921, a total of $10,636.50, deducted from the value of the mortgaged lands of the latter date, viz., $11,200, leaves a balance of $563.50, instead of $2,576.37, as found by the trial court.

Much additional evidence was taken touching the value of the mortgaged lands. The court below adhered to his former views and fixed the value at $10 per acre.

The evidence now convinces us more strongly than before that this was error. Complainant offered one witness on last hearing. His testimony discloses his valuation to be on a somewhat speculative basis, greatly in excess of the value paid by him for similar lands.

On the other hand, respondent offered six witnesses without apparent personal interest in the case, living near or having lands in the same region, each having knowledge of some portion of the lands, some having knowledge of the whole. In a business way they represent the farmer, the lumberman, the land dealer, and the lawyer.

The swampy condition of most of the land, the sparsity of valuable timber, and its market value, are shown with such overpowering weight of evidence that, making much allowance for difference of opinion on questions of value, we are fully convinced the market value of the lands as of the date in question was much below $10 per acre. Taking the amount of the unpaid mortgage debt as fixed by his honor, the trial judge, or as above indicated, the one-fourth interest mortgaged was insufficient in value to pay such debt. Further

than this we need not go in fixing the true value.

Appellant bank seeks a personal decree against Mrs. Barret for any excess of indebtedness. It is not entitled to such relief.

The evidence does not warrant a finding that Mrs. Barret ever gave a note or otherwise obligated herself personally to pay the debt. The form of the transaction, a straight deed with option to purchase back within a stated time, does not import any personal obligation. She merely bound her property for a lawful consideration and to the extent discussed in the former opinion.

Mrs. Barret takes a cross-appeal. Among other things, she asks a review of the question of the validity of the mortgage for any amount in the light of new evidence. She is entitled to have this question considered anew.

On the former hearing it appeared without substantial question that the King notes were surrendered and canceled at the time of the transaction. It is now shown they were delivered to Mrs. Barret and her receipt given for them. If this was with intent to keep them alive in her favor, a valuable consideration passed to her, paper guaranteed by the Kings. If not to be kept alive, then the view before expressed obtains.

It appears from the bank ledger that $6,000, the consideration expressed in the deed, was carried as a demand loan of Barret Bros. & Co., W. D. King indorser.

The weight of the evidence is that no note is or was ever in the bank representing such loan; that it was so entered as a matter of bookkeeping, the facts being shown by the outside documents and memoranda. The form of the transaction, and the purpose in hand, does not lend itself to the view of a new note being given with King as indorser. It is not likely that King would have become indorser on two sets of notes outstanding in the hands of different parties. No demand upon King appears ever to have been made on the Kings for payment of any note after this deal, although such note would long since be barred by limitation.

The suit theretofore brought on the Kings' indorsement is affirmatively shown to have been dismissed. True, this dismissal was after considerable delay, but nothing discloses it was not done in pursuance of the original agreement taking care of attorney's fees and costs.

Again, if any new note indorsed by King was ever given, it is clear enough the land was made the primary security which would inure to King, if forced to pay.

A consideration thus moving to King, as indorser, would support the mortgage just as a detriment to the bank would do under the more probable version of the evidence.

The decree is reversed on direct appeal by the bank, and a decree here rendered dismissing the bill out of court at the cost of complainant.

As against cross-appellant, the decree is affirmed.

Reversed and rendered on direct appeal.

Affirmed on cross-appeal.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

## On Rehearing.

BOULDIN, J. On rehearing the cross-appellant relies upon the case of Huntsville Bank & Trust Co. v. Thompson, 212 Ala. 511, 103 So. 477. Some expressions in that case, standing alone, may be a bit misleading.

In that case the wife had joined in a note with the husband and defended on the ground that she was surety merely. Plaintiff, by replication admitting suretyship, sought to avoid the defense by setting up that such suretyship was entered into in consideration that a debt from the wife to the husband, or to his firm, should be canceled to the amount of the note on which she was surety. The case declared this fact could not be pleaded in avoidance of the inhibition of the statute, and added: "The only consideration which can have that effect is one inhering in the immediate transaction—the creation of the debt—by virtue of which she then becomes bound to pay it as her own primary obligation." The case does not hold that the wife could not become a party to a novation whereby, in consideration of the cancellation of her debt to one, she became bound, along with her husband, for like amount to another. The case holds that her liability arises as a primary obligation for a consideration passing at the time of the transaction. It becomes her debt in such case, and she is not a surety merely. Such matter was covered by the general issue in that case.

Viewed in the light of the question there presented, and with the qualification above quoted, that case can be reconciled with this and many other cases holding the wife bound, unless the sole consideration is suretyship for the husband.

Application for rehearing overruled.